is 15-1616, Bridgeport Fittings versus Arlington Industries. Mr. Ungerman, whenever you're ready. May it please the court. The board, in this case, stated that it's a positive issue as does Hamilton, the prior art, disclose or render obvious the claimed relationship between the ends of the fingers and the core. The claim actually says, the end of the fingers of the second core engage the shoulder of the first core. So you didn't put in any declaration from an expert as to whether it would be obvious to modify Hamilton, right? No, Your Honor, we didn't. Don't you think that that's sort of helpful in these cases? Well, so we'll get to it, but the board actually found that modification of Hamilton would be obvious. It said that the cores or the grooves on the cores can be reversed. It's nothing more than common sense. And so without a declaration, the experts at the patent office were able to ascertain that it would be, certain things would be obvious. But they didn't find that a two-step modification of Hamilton would be obvious, correct? Which is why I'm going back to the claim language and. First, I want to understand how your second modification that you're proposing for the first time on appeal isn't waived. This is not a second modification and not something that we proposed for the first time on appeal. Opposing counsel objected to one of the figures in our brief that showed that was not used beneath. It was a, we'll call it demonstrative, for illustration purposes in the brief. But I'm not referring to that. I'm not arguing that point. And the underlying issue of obviousness. Well, then that's a little, I mean, I'm a little concerned about that, because you put in a figure in your brief that showed a different modification than the one that the board had found in order to try to create a shoulder, correct? No, Your Honor, that's not what it was. In fact, that modification pretty clearly didn't have the tightly fitting abutment. And it wasn't that we were proposing that that figure would have been obvious. It was trying to show that the conclusion that was reached doesn't make sense in light of the things that could be changed and in light of the claim construction that applied. Are you talking about the figure on page 43 of the brief? I believe that's it, yes, Your Honor. I mean, that's totally inoperable, right? Absolutely. You could never build that device. The idea was that was meant to show, the board construed the term end as the furthest point or boundary. And that was supposed to show a point as the end. But what I'd sort of like to talk about is what the claims do say and what the board actually did address in this case, which is they found that. I just want to completely understand. This is all very strange to me. So you're saying we should just ignore this figure on page 43? You can, because it doesn't support, it's not required for any of the arguments that any of the arguments even that are made in the brief. I think you're saying you couldn't have made this and that this wouldn't have been obvious. This wouldn't work, and it wouldn't have been obvious. It is to illustrate something that could be within the scope of the claims, but nobody would make this. Then why is it in your brief? To illustrate what could be within the scope of the claims was the point. The construction of the term end was furthest point of boundary and shoulder. And this was a finger with an end and a core with a shoulder. So in hindsight, I shouldn't have gone anywhere near that to make that argument, because it's just distracting from really what the case is about. And I apologize for that. The board, I think, incorrectly concluded that the ends of the fingers do not engage the shoulder of the first core. The ends of the finger engage the shoulder at the edge of the end, the interior edge, touches the shoulder. And we know it touches because it's a snug fit. And that's all that's required for engagement. Once the board found that Hamilton doesn't disclose, though, they completely dropped the ball. Because what happened was that they framed the issue, does Hamilton disclose or render obvious the relationship? They said, Hamilton doesn't disclose and Disclose what? A shoulder. Disclose the end of the fingers abutting the shoulder. Doesn't disclose the relationship between what is in the claims. So once they found it doesn't disclose, they never even talked about, hey, is this obvious? They told us that was the issue. And then they went on to say, and by the way, we don't have to address these other arguments about obviousness, but we agree with Mr. Ungerman that it would be obvious to reverse the grinding of the cores. And the reason why it would be obvious is the same reason why they should have found that the claims were obvious. Because the invention of Hamilton and the invention of the Arlington patent are identical. They are intended to create a molded part that has no flash by using core pieces that fit tightly together. And if you look at the Arlington patent, you look at the summary of the invention, they don't mention once in the summary, end of the fingers. How come the board's decision is not supported by substantial evidence when you presented no evidence at all on the issue of obviousness? Well, there is evidence. The evidence is in the prior art. And the board was able to look at the prior art and conclude that modifications were obvious and should have used that same reasoning on the basis of the evidence, the prior art of record, to reach the same conclusion regarding the claim language. But the problem with the board's decision was, one of the problems is, they never got to obviousness. They simply concluded, and their analysis is on page 12 of A12. It is less than a page long. And they have this idea that the ends are open to the mold cavity, and then it's where they stop. They don't even put in a conclusion that it's obvious. They say, we affirm. Wait, but it was based on the whole discussion regarding Hamilton that occurred earlier. I mean, you really can't say that the page where they're essentially summarizing things is all they did. So they described Hamilton earlier on. They said what they felt Hamilton showed. And then they talked about claim construction. And then they said, Hamilton doesn't disclose the relationship between the shoulder and the core. And that's partially because they rejected your definition of end portion, correct? Yes. They came up with their own construction. Well, I mean, I don't understand how you could even claim that end portion and end are one and the same when the claim exactly says, extending from the end of the first core towards the base portion. And in that case, you've got an end portion that extends from the end. By definition, they're different. All right, so if we're talking about claim construction of end and end portion, the board here went on a hunting expedition to come up with this theory that the patent consistently uses end in one way and end portion in another way. What do you mean a hunting expedition? They looked at the specification. They looked at the language of the claims. That's what they're supposed to do, right? But nobody presented that strategy to them. In fact, before the board, I was the only one who presented a claim construction. The examiner didn't present a claim construction. And Arlington didn't present a claim construction. So the board went and came up with this idea, end is different from end portion. But the specification itself is not at all consistent. Specification refers to that same end, 70, also as an end portion, 70. And they refer to other things as ends and end portion. So my view is that under the broadest reasonable interpretation, the board should not have read that limitation in from the spec, read it in even though it was inconsistent. 70 is the lens-shaped end. Right. That's the only end for those fingers, is that element 70. And that was one of my points. They called a lens-shaped end. They also called an end portion 70 in the specification. Show me where that is. I will. If your honor wouldn't mind, I can find it and point to it on rebuttal. OK. But that's pretty important. You don't know where it is? I honestly, I don't have my notes that have that site in it in front of me. But I have it. It's here. And I'll point you to it on rebuttal. Thank you. When you're into your rebuttal, do you want to save the rest of it so we can proceed then? You're done, right? Yes, I'd like to reserve the balance of my time for rebuttal. Thank you. Ms. Kloon. May it please the court, Catherine Kloon on behalf of the FLE Arlington Industries. The board's findings should be affirmed because they are clearly based on the broadest reasonable interpretation of the disputed term end. And the factual findings underlying their obviousness determination that Hamilton does not render Arlington's patents obvious based on the lack of the shoulder end engagement are supported by substantial evidence in the record. Let me ask you this question. Do you think in this case that the broadest reasonable interpretation is actually different than the Phillips interpretation? That's a very good question, Your Honor. I don't think so, actually. I think in a court of law, we would actually get the exact same instruction in this because of the fact that broadest reasonable interpretation still has to be in light of the specification. It still is looking at the claims. But you also get you look at the dictionary definition, which Bridgeport fails to mention that actually the board actually relied on Bridgeport's own dictionary definition that they submitted. And it's actually 100% consistent with that. So the fact is that the broadest definition of end in this particular coring system is the same as what would be really the claim construction as well because the claims, the patent basically differentiates always between the end and the end portion consistently through the claims, the figures, and how the product actually works. As Your Honor asked, they always refer to the 70 as the lens-shaped end. And that is the only portion that actually engages the shoulder, which is how the claims describe it. So it wouldn't Bridgeport's request to basically conflate the term end portion with end, not only does that not make sense based on how the invention is described because of the fact that the first core's shoulder is basically created by the grooves terminating in the shoulder. So it's basically an abutment, although not required by the claims that it has to be an abutment. But it does terminate in the shoulder. The end of the fingers of the second core have to engage it. And the difference between Arlington's and Hamilton's inventions is so significant because of the fact that Arlington's invention requires that engagement for its flash-free. And in fact, in the 538, every claim requires that there's a gap-free engagement. On the other hand, Hamilton requires that there's always a sliding fit because their three cavities have to be in moving, sliding arrangement. They couldn't be more different with respect to the fact that they don't have any ends engaging any shoulders because it wouldn't actually work. So with respect to Bridgeport, I believe, points to one section in the patent where it looks like there might be a typo where they're saying 58, the end portion 58, intersects with 70. And they don't actually engage at all. So let me get this site again. What column is it on? It's 72 minus 66, which means 67. Here it is. Sorry. Say that again. It's 72 minus 66, which is 67. I just wanted to address that because that's the first time that I've heard them actually make that argument, Your Honor. So I just wanted to respond to that. So what column are we in? We're in column four, A72 of the 886. I'm sorry. Say it one more time. It's 66 or 67. They say 66. The cores 50 and 52 are connected in such a manner that the end portions, 58 and 70, of each core, 50 and 52, respectfully, are in contact with each other. And there are no gaps between the joint portions of the first core and the second core. They are actually, it's clearly, it must be a typo because they never actually engage whatsoever with 50 and 52. So I think that's the only aspect that we've ever seen. In every other aspect, the end is always referred to as 70. It's always referred to as the furthest tip or boundary point, both on the first core and the second core, which is what's so important here, is that they actually use end very consistently as always the furthest point or boundary as the board construed. There's no shoulder in Hamilton, is there? There is absolutely no shoulder in Hamilton, exactly, Your Honor. I mean, so does it really make a difference what the end and endpoint are? Well, I think it does, yes, Your Honor. They don't have an end because, of course, Bridgeport's arguing that the shoulder is 37. And what the board found with respect to the shoulder, they said even if surface area 37 could be a shoulder, it does not engage any end. But they also say it doesn't actually meet the structural requirements of a shoulder. So even if Hamilton thought it was a shoulder, it wouldn't meet Arlington's requirement of the shoulder because the shoulder has to be specifically between the tubular end portion as well and terminating in the shoulder and between the narrow end portion. Again, nothing that Hamilton, for example, would have disclosed. Again, because it wouldn't have worked. Now, it's interesting that Bridgeport now is throwing out this new modification that they actually spent a portion of their brief on because that, as you mentioned, not only does it wouldn't work, but it goes against, of course, the essential principle of operation of Hamilton, which is why these two inventions are so completely different. So the factual findings of the board are clearly supported by the substantial evidence in the record. And both the board, actually, and the examiner found the same thing, that the shoulder was not disclosed in Hamilton. And therefore, Harlington's patents cannot be rendered obvious by Hamilton. And that's the only reference in dispute. So for those reasons, if the court doesn't have any further questions, we would request the board's decision to be affirmed. Thank you. Thank you. Thank you, Your Honors. Council did point out the location in the specification that refers to end portions 70, which is the same element as the end 70. Council did mention one thing in her argument that I'd like to address. She said, all of the claims of the 538 require a gap-free connection. There's one independent claim in the 538. The other patent has two independent claims, and it doesn't require, in the claim, a gap-free connection. But what I want to go back to is the inexplicable manner that the court or the board found that there was no disclosure, never addressed, renders obvious. They acknowledge renders obvious is important, and they never addressed it. We think that if they had addressed it, they should have, were compelled to find that it was obvious, because really the invention, as I said, is these cores need to fit tightly together to avoid having material invade between the cores and create flash. That's exactly the invention in Hamilton. That's exactly what Hamilton addresses. That's the only thing that is set forth in the summary of the invention. And this idea of end engaging shoulder is really no more than a design choice. The board found that changing this grinding by moving the grooves around would have been obvious, just for the same reasons. Moving the, creating a definitive end and shoulder engagement across the entire surface of the end, which is what their preferred embodiment shows, would have been the same obvious alteration in grinding. The board seemed to feel like the preferred embodiment of Arlington shows the entire end abutting the shoulder. No part of the end does not abut the shoulder. And it seemed like that's the direction they went in when they said, look, the end in Hamilton is open to the mold cavity. It doesn't detract from the fact that the edge of the end of Hamilton engages. So if you have any questions. Thank you. Thank you. Thank you.